**DONE and SIGNED August 22, 2018.**



_____
**JOHN W. KOLWE**
**UNITED STATES BANKRUPTCY JUDGE**

_____

UNITED STATES BANKRUPTCY COURT
WESTERN DISTRICT OF LOUISIANA
ALEXANDRIA DIVISION

| | | |
|---|---|---|
| In re: | \| | Bk. No. 15-81004 |
| | \| | |
| Louisiana Safety Association of | \| | Chapter 7 |
| Timbermen - Self I | \| | |
| Debtor | \| | |
| ——————————————————— | \| | |
| | \| | |
| T. Brett Brunson as Trustee for Louisiana | \| | AP. No. 17-8003 |
| Safety Association of Timbermen- | \| | |
| Self Insured Fund | \| | |
| Plaintiff(s) | \| | |
| | \| | |
| vs. | \| | |
| | \| | |
| Ascension Ready Mix, Inc., | \| | |
| O'Nealgas, Inc., | \| | |
| E.A. Hinton Well Servicing Inc., and | \| | |
| Alford Motors, Inc. | \| | |
| (On behalf of themselves | \| | |
| and other similarly situated) | \| | |
| Defendant(s) | \| | |
| ——————————————————— | \| | |

**MEMORANDUM OPINION**

Before the Court is the Motion to Certify Class filed by the plaintiff, T. Brett Brunson, the

Chapter 7 Trustee for the debtor, Louisiana Safety Association of Timbermen Self Insured Fund

("Timbermen"). Prior to seeking relief under Chapter 7, Timbermen was a group self-insurance

fund that provided workers' compensation benefits to employees of members of the fund. The

Trustee filed this adversary proceeding alleging Timbermen's members have statutory and

contractual solidary liability—Louisiana's equivalent to joint and several liability—for the claims filed against Timbermen's bankruptcy estate.  Rather than suing each member individually, the Trustee named as defendants only a handful of Timbermen's members as representatives of a class comprised of nearly 5,000 former members of the fund.  All of the named defendants responded to the Trustee's motion to certify, but only one objected.  Based on the evidence adduced during the certification hearing, the parties' arguments and other relevant authorities, and for the reasons set forth in this opinion, the Court will grant the Trustee's request to certify the class as an "opt-out" class under Fed. R. Civ. P. 23(a) and (b)(3).

## BACKGROUND

### A.    Timbermen

This adversary proceeding arises from the demise of Timbermen.  Timbermen was formed in 1991 by the Louisiana Safety Association of Timbermen, a Louisiana nonprofit corporation.  It is governed by certain parts of the Louisiana Workers' Compensation Act, La. Rev. Stat. § 23:1191 *et seq.* ("the Act"), which authorizes the establishment of self-insurance funds by members of a "bona fide trade or professional association" who meet certain financial and other requirements. *See* La. Rev. Stat. § 23:1195.  Upon commencing operations, Timbermen became an option available to an employer to "secure compensation to his employees." La. Rev. Stat. § 23:1168(A)(2).

Nan P. Harrell, Timbermen's former risk manager, provided two affidavits and testified at the hearing in support of certification.  She provided a general description of the process for an employer to obtain workers' compensation coverage from Timbermen.  Each employer submitted an application, setting forth payroll and employee information.  Timbermen used this information to calculate the appropriate premium.  Upon payment of the premium and the execution of certain agreements, the employer became a member of the fund and Timbermen assumed the

2

responsibility of providing workers' compensation benefits to the employer's employees.

The Act imposes certain obligations on employers joining a self-insurance fund like Timbermen. Of importance here is La. Rev. Stat. § 23:1196(F), which provides that "[a] fund member shall be liable in solido for liabilities of the fund incurred by the fund after the inception of the fund year in which the employer becomes a member of the fund."

The Act also mandates that there be an "indemnity agreement signed by the employer and the fund representative acknowledging and agreeing to the assumption of the liabilities as set forth in this subpart." La. Rev. Stat. § 23:1195(A)(2). According to Ms. Harrell, this statutorily required indemnity agreement was one of the agreements executed by an employer at the time of joining the fund. Ms. Harrell also explained that Timbermen used four versions of the indemnity agreement during its existence. The version signed by a particular employer depended upon the year in which it became a member of the fund. Each version of the indemnity agreement contains a provision addressing the employer-member's solidary liability for the debts of Timbermen. The evidence before the Court includes an example of each version of the indemnity agreement.

## B. Timbermen's Bankruptcy Case

The evidence shows that in 2015, the Louisiana Department of Insurance ("Department") completed an examination of Timbermen's financial records and discovered that as of December 31, 2013, Timbermen had a member's deficit of $1,700,106. The Department directed Timbermen to assess its members in amounts sufficient to eliminate this deficit. Timbermen's apparent failure to do so caused the Department to issue a "Cease and Desist Order" on August 7, 2015, ordering Timbermen to stop writing workers' compensation coverage for its members.

On September 11, 2015, Timbermen filed its Chapter 7 Petition in this Court. Creditors filed 572 proofs of claim, totaling over $47 million. Through ongoing claim objections and

settlements, the Trustee has reduced the total amount of claims against the estate to approximately $40 million.

## C. The Adversary Proceeding and Motion to Certify the Class

The Trustee filed this suit against a class of defendants comprised of all fund members of Timbermen who held such membership at any time between January 1, 1998 through September 11, 2015, except those members with whom the Trustee settled and granted a release of liability ("Putative Class"). The Trustee named the following members of the Putative Class as "Putative Class Representatives:" O'Nealgas, Inc., E.A. Hinton Well Servicing, Inc., Alford Motors Inc., Cardiovascular Surgery of Alexandria, LLC, Coastal Pipe of Louisiana, Inc., Reliable Amusement Co., Inc., and The Bank. (Ascension Ready Mix, Inc. and Jonesboro State Bank were also named as Putative Class Representatives. However, the Trustee reached a settlement with each of these parties, and they have been dismissed from this action.)

Although the merits of this Complaint are not before the Court, a brief overview of the parties' claims and defenses provides a necessary backdrop for resolving the certification question. The Trustee alleges that the Putative Class has statutory solidary liability under § 1196(F) for the $40 million in claims filed in Timbermen's bankruptcy case. As a separate cause of action, he alleges the Putative Class has contractual solidary liability for these claims under the indemnity agreements and other various agreements. According to the Trustee, the primary purpose of this action is to efficiently and fairly determine a formula for calculating each Putative Class member's virile share of Timbermen's liabilities. The Trustee is essentially attempting to complete the assessment against Timbermen's members previously ordered by the Department.

The Trustee noted in his briefing that the solidary liability provisions in the indemnity agreements appear to limit such liability to only claims for workers' compensation that arose in a

year in which an employer was a member of Timbermen.  However, the Trustee contends this contractual provision does not alter what he views to be a more expansive liability imposed under § 1196(F).  He states that the two types of liability are independent from one another and should not be conflated.

The Putative Class Representatives generally deny the allegations of the Trustee and assert numerous affirmative defenses to the Trustee's claims.  They each rely on the solidary liability provisions in the indemnity agreements to limit each members' potential solidary liability to only claims for workers' compensation that arose in their respective years of active membership in the fund.  They also assert other defenses, including prescription, lack of consideration, and alleged breaches of the Act and the indemnity agreements by Timbermen.

Currently before the Court is the Trustee's Motion to Certify Class.  Stressing judicial economy, the Trustee urges this Court to certify the Putative Class under Fed. R. Civ. P. 23(b)(3).  The Trustee contends the Putative Class faces similar, if not identical, factual and legal issues on solidary liability, making this case uniquely appropriate for adjudication as a class action.  All of the Putative Class Representatives agree with the Trustee except Reliable.  Reliable objects to the Trustee's motion, generally arguing that:  (i) each class member's defenses are unique and personal, not common or typical across the class; (ii) conflicts exist within the class, which make trying the case as a class action impossible; and (iii) the class action is not a superior procedure to the filing of separate lawsuits against each member of Timbermen, because the majority of Putative Class members will choose to control their own defenses and opt out of the class, rendering certification a futile exercise.

## JURISDICTION

The Court has "related to" jurisdiction over this matter under 28 U.S.C. § 1334(b).

Proceedings that involve "related to" jurisdiction and do not otherwise arise under the Bankruptcy Code or arise in a bankruptcy case are "non-core." *In re CHC Group, Ltd.*, 2017 WL 1380514, at *4 (N.D.Tex. 2017) (citing *Faulkner v. Eagle View Capital Mgt.* (*In re The Heritage Org., L.L.C.*), 454 B.R. 353, 360 (Bankr.N.D.Tex. 2011)). In such cases, a bankruptcy court may not issue a final order adjudicating the claims without the parties' consent. 28 U.S.C. § 157(c); *Wellness Int'l Network, Ltd. v. Sharif*, --- U.S. ---, 135 S.Ct. 1932, 191 L.Ed.2d 911 (2015); *Stern v. Marshall*, 564 U.S. 462, 131 S.Ct. 2594, 180 L.Ed.2d 475 (2011); *In re CHC Goup, Ltd.*, 2017 WL 1380514 at 4.

However, the Court may issue interlocutory orders "'in proceedings in which it does not have the authority to issue a final judgment.'" *In re Provident Royalties, LLC*, 581 B.R. 185, 190 (Bankr. N.D. Tex. 2017) (quoting *West v. Peterson (In re Noram Res., Inc.)*, No. 11-3598, 2012 WL 2571154, at *1 (Bankr. N.D.Tex. July 2, 2012)). A bankruptcy court's ruling on a motion to certify a class is an interlocutory judgment. *Chrysler Fin. Corp. v. Powe*, 312 F.3d 1241, 1246 (11th Cir. 2002). Thus, this Court has the authority to certify a class under Fed. R. Civ. P. 23, made applicable to adversary proceedings pursuant to Fed. R. Bankr. P. 7023. *See Wilborn v. Wells Fargo Bank, N.A. (In re Wilborn)*, 609 F.3d 748, 754 (5th Cir. 2010) ("[B]ankruptcy court has authority to certify a class action of debtors whose petitions are filed within its judicial district provided the prerequisites for a class under Rule 23 are satisfied."); *Rodriguez v. Countrywide Home Loans, Inc. (In re Rodriguez)*, 432 B.R. 671 (Bankr. S.D.Tex. 2010); *In re Talbert*, 347 B.R. 804 (Bankr. E.D.La. 2005).

## ANALYSIS

Rule 23(a) provides in part that "[o]ne or more members of a class may *sue or be sued* as representative parties on behalf of all members . . ." Fed. R. Civ. P. 23(a) (emphasis added). It is

the "sue or be sued" language of the rule that authorizes courts to certify a defendant class. *Gray v. Shapiro (In re Dehon)*, 298 B.R. 206, 213 (Bankr. D. Mass. 2003) (citing 7A Wright, Miller & Kane, FEDERAL PRACTICE & PROCEDURE, § 1770, 395 (2002)); *MJC Holding Corp. v. Fitzmaurice (In re Broadhollow Funding, Corp.)*, 66 B.R. 1005, 1007 (Bankr. E.D.N.Y. 1986). Certification of a defendant class is governed by the same rules applicable to the certification of a plaintiff class. *In re Dehon*, 298 B.R. at 213. Certification is permitted if: the Putative Class satisfies the Rule 23(a)(1) and (2) prerequisites of numerosity and commonality; the Putative Class Representatives satisfy the Rule 23(a)(3) and (4) prerequisites of typicality and adequacy of representation; and the class fits into one of the three categories of Rule 23(b). *Id.* Here, the Trustee is seeking certification of the class under Rule 23(b)(3), which sets forth what are generally known as the "predominance" and "superiority" requirements. The plaintiff has the burden of establishing that each requirement for certification is satisfied. *In re Rodriguez*, 432 B.R. at 690.

In deciding the certification question, courts must conduct a "rigorous analysis" of the Rule 23 requirements. *Castano v. Am. Tobacco Co.*, 84 F.3d 734, 740 (5th Cir.1996) (citing *Gen. Tel. Co. v. Falcon*, 457 U.S. 147, 161, 102 S.Ct. 2364, 2372, 72 L.Ed.2d 740 (1982)). This analysis may require looking "beyond the pleadings . . . as a court must understand the claims, defenses, relevant facts, and applicable substantive law in order to make a meaningful determination of the certification issues." *Id.* at 744. In performing this analysis, there may be "some overlap with the merits of the plaintiff's underlying claims." *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 351, 131 S.Ct. 2541, 2551, 180 L. Ed. 2d 374 (2011).

For the following reasons, the Court finds that the requirements for certification of a defendant class under Rule 23(a) and (b)(3) are met in this case.

7

## A.  Class definition

As a preliminary matter, the Court must decide whether the class is properly defined.  "[I]n order to maintain a class action, the class sought to be represented must be adequately defined and clearly ascertainable."  *Union Asset Mgmt. Holding A.G. v. Dell, Inc.*, 669 F.3d 632, 639 (5th Cir. 2012) (citation omitted).  "However, the court need not know the identity of each class member before certification; ascertainability requires only that the court be able to identify class members at some stage of the proceeding."  *Frey v. First Nat. Bank Sw.*, 602 F. App'x 164, 168 (5th Cir. 2015) (quoting Rubenstein, NEWBERG ON CLASS ACTIONS § 3:3 (5th ed. 2011)).

The Trustee defines the class here as "all members of Timbermen who held membership at any time between January 1, 1998 through September 11, 2015, except those members with whom the Trustee has settled and granted a release of liability."  Ms. Harrell's testimony established that all members submitted applications to Timbermen and executed an indemnity agreement and a membership agreement upon being accepted as a member.  Timbermen's files contain this documentation, and the Trustee has access to these files.  From these files the parties can identify every Timbermen member.  Thus, the Court finds that the Putative Class is adequately defined, clearly ascertainable and certifiable subject to the Trustee satisfying the requirements of Rule 23(a) and Rule 23(b)(3).

## B.  Rule 23(a)—the prerequisites of numerosity, commonality, typicality and adequacy

### 1.  Numerosity

Rule 23(a)(1) requires that the class be "so numerous that joinder of all members is impracticable."  Fed. R. Civ. P. 23(a)(1).  In order to satisfy this prerequisite, "a plaintiff must ordinarily demonstrate some evidence or reasonable estimate of the number of purported class members."  *Zeidman v. J. Ray McDermott & Co.*, 651 F.2d 1030, 1038 (5th Cir. Unit A 1981).

The focus, however, "'is not on numbers alone, but on whether joinder of all members is practicable in view of the numerosity of the class and all other relevant factors.'" *Zeidman*, 651 F.2d at 1038 (quoting *Philips v. Joint Legislative Committee*, 637 F.2d 1014, 1022 (5th Cir. 1981)). Other relevant factors a court should consider in addition to class size include judicial economy, the geographical dispersion of the class, the size of each individual claim, and the ease with which class members may be identified. *In re Rodriguez*, 432 B.R. at 692.

The evidence in this case shows that the Putative Class has 4,928 distinct fund members, with there being 663 in the year with the least number of members and 2,190 in the year with the most. A Putative Class of this size exceeds the number of class members the Fifth Circuit has previously found to satisfy the numerosity factor. *See Mullen v. Treasure Chest Casino, LLC*, 186 F.3d 620, 624-25 (5th Cir. 1999) (finding a class of 100 – 150 satisfies numerosity). Also, if joinder of such a large number of defendants is not impossible, "it is at least impracticable, and impracticability is the standard of measure used in Rule 23(a)(1)." *In re Broadhollow Funding Corp.*, 66 B.R. at 1009. And, none of the Putative Class Representatives contests that a class of 4,928 members satisfies the numerosity requirement. Thus, the sheer size of the class supports a finding of numerosity.

Consideration of other factors such as judicial economy, geographical dispersion and claim size also supports this finding. Alternative methods for adjudicating the issues in this case, such as filing 4,928 separate actions, or joining 4,928 defendants in one suit, would unnecessarily cause duplication of effort, strain court resources and increase litigation costs. Also, most of the Putative Class members are scattered across Louisiana, with a few residing in surrounding states, making it at least difficult to join them all in a single suit. Finally, each Timbermen member may benefit from a defendant class by reducing its litigation costs through economies of scale and by

9

"possibly reducing expected exposure through the spreading of liability costs." 2 NEWBERG ON CLASS ACTIONS, § 5:4 (5th ed. 2012).  Indeed, depending on the outcome on the merits, it is possible that a member's cost to defend an individual action by the Trustee may exceed such member's virile share of Timbermen's liabilities.  Accordingly, the Court finds that the numerosity factor is satisfied in this case.

### 2.    Commonality

Rule 23(a)(2) requires that there be questions of law or fact common to the class. Fed. R. Civ. P. 23(a)(2).  The threshold for commonality is not high and the claims at issue need not be identical.  *In re Rodriguez*, 432 B.R. at 694.  "Rule 23(a)(2) requires that all of the class member's claims depend on a common issue of law or fact whose resolution 'will *resolve* an issue that *is central to the validity* of each one of the [class member's] claims in one stroke.'"  *M.D. ex rel. Stukenberg v. Perry*, 675 F.3d 832, 840 (5th Cir. 2012) (citation omitted).  "The plaintiff need only show there is at least one issue whose resolution will affect all or a significant number of the putative class members." *Doiron v. Conseco Health Ins. Co.*, 279 F. App'x. 313, 316 (5th Cir. 2008) (citations omitted).

The Trustee asserts the commonality factor is satisfied here, because each Putative Class member has the same solidary liability stemming from § 1196(F) and the various indemnity agreements.  Reliable disagrees, asserting that solidary liability is not disputed and can be decided by a "simple motion."  The real issue, according to Reliable, is whether a Putative Class member has liability at all, and if so, the extent of that liability.  On these issues, Reliable contends the Putative Class members have unique and personal defenses to liability that are not common to the entire class.  For example, Reliable alleges Timbermen violated certain aspects of the Act in 1998, and only those employers who were members of Timbermen in that year will have that defense.

10

Reliable also argues that any member who terminated its membership more than 10 years before this suit was filed will have a prescription defense. Replying, the Trustee states that the defenses noted by Reliable are shared by thousands of Timbermen members.

Based on the parties' pleadings and the evidence adduced during the hearing, the Court finds that there are numerous issues common to the class. These issues include: whether a member's liability is limited to claims for payment of worker's compensation or extends to all claims against Timbermen; whether a member is liable for claims incurred outside the time period it was a member of the fund; whether each indemnity agreement was properly and fully executed; whether Timbermen or fund members violated the Act; and whether portions of the Trustee's claims have prescribed.

There also are numerous statutory and contractual interpretation questions emanating from these issues, and the elements of proof on these questions will likely be common across the entire class. The resolution of each of these questions will go a long way in establishing the parameters for the formula alluded to by the Trustee for calculating each Putative Class member's virile share, if any, of Timbermen's liabilities. Put another way, it is "the capacity of a class wide proceeding to generate common answers [to these questions which is] apt to drive the resolution of the litigation." *Wal–Mart Stores, Inc.*, 131 S.Ct. at 2551. Thus, the Court finds that the commonality factor is satisfied.

### 3. Typicality

Rule 23(a)(3) requires that the "claims or defenses of the representative class [be] typical of the claims or defenses of the class." Fed. R. Civ. P. 23(a)(3). "[T]he test for typicality is not demanding. It focuses on the similarity between the named [class representative's] legal and remedial theories and the theories of those whom they purport to represent." *Mullen*, 186 F.3d at

625 (citations omitted). The typicality requirement does not mandate that the defenses of the representative parties and the class be completely identical or perfectly coextensive. *See Weinman v. Fid. Capital Appreciation Fund (In re Integra Realty Res., Inc.)*, 179 B.R. 264, 270 (Bankr. D. Colo. 1995). It is sufficient if the defenses are substantially similar and "there is a nexus between class representatives/claims or defenses and common questions of fact or law which unite the class." *Id.*

The Trustee argues that the Act and the indemnity agreements, which both impose solidary liability on all Timbermen members, provide the nexus between the Putative Class Representatives and the Putative Class members that unite and align their interests. Reliable again disagrees, claiming that because its membership in Timbermen is limited to the years 1998 through 2002, it has unique defenses not shared by the entire class. Two examples include the alleged breach of the Act by Timbermen in 1998 and prescription, both of which were discussed in the commonality section of this opinion.

As an additional example, Reliable alleges that as of the date Timbermen filed its bankruptcy proceeding, there were only four unpaid workers' compensation claims attributable to the years in which it was a member of the fund. Based on this assertion, it contends the amount for which it could be liable is drastically lower than that of the Putative Class members who were fund members in only the later relevant years. Reliable is essentially arguing that the defenses of each member will vary based on such member's years of membership in the fund and the amount of claims attributable to those years, thereby creating atypical defenses within the class. Replying, the Trustee avers that Reliable has not pointed to a single defense that would not be shared by hundreds, maybe thousands, of fund members.

12

The court in *Northwestern Nat. Bank of Minneapolis v. Fox & Co,*, 102 F.R.D. 507 (S.D.N.Y. 1984) considered arguments similar to Reliable's. The plaintiff there sought certification of a defendant class based on the allegation that 300 partners of an accounting firm were jointly and severally liable for fraudulent and negligent acts of the accounting firm and certain of its partners. The defendants opposed certification on the basis that a large percentage of the class members were partners for only a part of the proposed class period, and therefore, could only be liable for the acts of their co-partners that were committed while they belonged to the firm. Like Reliable, they alleged that the damages and the elements of proof of those damages would vary by year, thereby precluding a finding of typicality or adequacy of representation.

The plaintiff in *Northwestern* countered, arguing that since certain of the class representatives were partners for the whole time, and because there were some who entered and withdrew from the partnership during the relevant time period, the class representatives collectively represented any separate defense that subsets of partners may possess. The court sided with the plaintiff, finding "that as long as some of the class representatives were partners at [the accounting firm] throughout the entire class period, all class members will be adequately represented." *Northwestern Nat. Bank of Minneapolis*, 102 F.R.D. at 513.

Returning to this case, the Court is satisfied that all of the alleged unique defenses asserted by Reliable are typical of large subsets of Putative Class members, and that those defenses are collectively represented by the Putative Class Representatives. The evidence adduced at the certification hearing shows that at least one Putative Class Representative executed each of the four versions of the indemnity agreement. There are multiple Representatives who were only fund members during the early relevant years of the class period, and there are multiple Representatives who were members during the later relevant years. There are some who were members for all of

13

the relevant years. Thus, the Putative Class Representatives collectively represent all defenses that subsets of members may possess. Accordingly, the Court finds that the typicality factor is satisfied here.

### 4. Adequacy

Rule 23(a)(4) provides that certification should only be granted if "the representative parties will fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a)(4). The adequacy requirement serves to "uncover conflicts of interest between named parties and the class they seek to represent." *In re Deepwater Horizon*, 785 F.3d 1003, 1015 (5th Cir. 2015). Differences that create a conflict between the representative defendants and the class members' interest will render a class representative inadequate. *Mullen*, 186 F.3d at 626.

The Trustee contends that the adequacy requirement is met here because each fund member is solidarily liable with other class members and thus their interests are aligned, not antagonistic, in seeking "a judgment applicable to all Putative Class members that is consistent since they would owe reimbursement to those who may receive a less favorable judgment resulting in the payment of a larger sum." (Plaintiff's Memorandum in Support of Motion to Certify Class, at 20, ECF No. 31.)

Reliable disagrees, claiming that its interests are antagonistic to those of the other Putative Class members thus making it an inadequate class representative. Reliable contends this conflict becomes evident when the various unpaid workers' compensation claims are examined as of the date Timbermen filed its Chapter 7 proceeding. Reliable provided evidence which purports to show that the majority of those unpaid claims are traceable to the later years of the class term. In contrast, only four claims, representing but a fraction of the total claims against Timbermen's bankruptcy estate, appear to be attributable to 1998 – 2002, the years of Reliable's membership.

Based on these alleged facts, Reliable claims that it and other similarly situated Putative Class Representatives will argue for an equitable or contractual limitation on their own liability based on their individual term of membership, i.e., that their solidary obligation is limited to only claims that arose while they were a member of Timbermen. Conversely, a Putative Class member who was only a member in the later years of the class term may argue that all members from 1998 forward are liable for the whole of Timbermen's insolvency. This is because an expansion of the liable class would reduce the amount of the late term member's virile share of the total debt. In other words, a late term member may push for a settlement seeking to spread the entire claim balance equally among all 4,928 members. Reliable contends this antagonism within the class is evident now, thus defeating a finding of adequacy. Reliable also claims that this conflict prevents the same law firm from representing all of the Putative Class Representatives.

Despite Reliable's protestations, such a conflict has not materialized. As previously noted, each Putative Class Representative has asserted affirmative defenses based on years of membership in the fund. Also, they all argue for limiting the exposure of the Putative Class members to claims arising from a workers compensation obligation that arose while they were members of Timbermen. Thus, there is not a current conflict within the class, because the positions asserted by the other Putative Class Representatives are congruent with, not antagonistic toward, those asserted by Reliable.

That is not to say that Reliable's argument is without merit, as there is a potential for the conflict described by Reliable to arise during the course of this case. However, this potentiality falls short of defeating class certification for two reasons. First, Rule 23 allows for flexibility in the Court's management of a class action. "Even after a certification order is entered, the judge remains free to modify it in the light of subsequent developments in the litigation. . . . This

flexibility enhances the usefulness of the class-action device. . . ." *Falcon*, 102 S.Ct. at 2372 (citation omitted); *In re Dehon*, 298 B.R. at 215 ("[I]f due process or class maintenance concerns later arise, the court may always cure factual or legal variations between class members by decertification, in whole or in part, or by the creation of subclasses as the situation warrants."). When this issue was addressed at the hearing, Putative Class Counsel acknowledged that, depending on the outcome of the initial questions regarding liability, conflicts could arise that may require one of several remedies, including the creation of sub-classes, appointment of additional counsel, or even decertification of the class.

Second, as to what appears to be the Trustee's ultimate goal—a proposed settlement with the class—the Putative Class members will have notice and an opportunity to object to any proposed settlement if they determine it is not in their best interest under Fed. R. Civ. P. 23(e). Rule 23(e) "provides a check against settlement dynamics that may 'lead the negotiating parties— even those with the best intentions—to give insufficient weight to the interests of at least some class members.'" *In re Integra Realty Resources, Inc.* 262 F.3d 1089, 1111 (10th Cir. 2001) (citations omitted).  Given these built in protections, the possibility that conflicts between the class members may arise in the future does not present an insurmountable obstacle to due process or the future litigation of the claims as a defendant class.

Reliable also argues that it is not an adequate representative of the Putative Class because there is "minimal incentive for Reliable to pay millions in legal fees when its maximum exposure is likely below that amount anyway."  (Reliable's Memorandum in Opposition to the Trustee's Motion to Certify Class, at 13, ECF No. 110.)  The Court disagrees.  It is not unusual for class representatives to balk at being required to assume leadership for a defendant class.  However, "Rule 23(a)(4) does not require a willing representative, merely an adequate one." *Monaco v.*

*Stone* 187 F.R.D. 50, 66 (E.D.N.Y. 1999). Courts have addressed the reluctant-defendant-class-representative quandary by "merging the commonality and typicality requirements with that of adequacy—if the claims are truly common and the proposed representative's claim is indeed typical, then if the representative vigorously defends its own interests, it will also thereby vigorously defend those of the absent defendant class members." 2 NEWBERG ON CLASS ACTIONS § 5:12 (5th ed.); *Consol. Rail Corp. v. Town of Hyde Park* 47 F.3d 473, 484 (2nd Cir. 1995) ("[I]n defending their own interests, the designated [defendant class] representatives will adequately and fairly protect the interests of the remaining class members in compliance with [Rule] 23(a)(4).").

The law on solidary obligations makes it likely that Reliable will be defending the interests of the entire Putative Class in defending its own interests. In Louisiana, "an obligation is solidary for the obligors when each obligor is liable for the whole performance." La. Civ. Code art. 1794. And one sued on a solidary obligation may assert defenses "that are common to all the solidary obligors." La. Civ. Code art. 1801. This means that each member of Timbermen is potentially liable for the entirety of Timbermen's debts, and that each member may assert any defense to payment of this debt that would be common to all Timbermen members.

Thus, whether the Trustee pursues claims against Reliable individually, as part of a small group of defendants, or as a representative of a class composed of all the Timbermen members, Reliable's litigation strategy will likely be consistent. As a result, its costs of defense will be similar, notwithstanding its assertion that it may only have liability for a small amount of the claims. Put another way, "application of the class action device in this case will not expose [Reliable] to liability beyond that which would exist if [it] were to be sued individually." *Northwestern Nat. Bank of Minneapolis*, 102 F.R.D. at 515. Thus, the Court does "not find that defendant class certification will work an injustice" to Reliable or any other Putative Class

Representative. *Id.* The Court finds that the adequacy of representation requirement is met in this case.

## C.     Rule 23(b)(3)—the requirements of predominance and superiority

Finding the Rule 23(a) prerequisites satisfied, the Court now turns to the additional requirements of Rule 23(b)(3). This provision generally applies anytime a plaintiff seeks a money judgment against a defendant class. In those cases a court can only certify a class if "it finds that the questions of law or fact common to the class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." Fed. R. Civ. P. 23(b)(3). *Amchem Products, Inc. v. Windsor,* 521 U.S. 591, 615, 117 S.Ct. 2231, 2246, 138 L.Ed2d 689 (1997). In adding "predominance" and "superiority" to the qualification-for-certification-list, "the Advisory Committee sought to cover cases in which a class action would achieve economies of time, effort, and expense, and promote uniformity of decision as to persons similarly situated, without sacrificing procedural fairness or bringing about unfavorable results." *Amchem Products, Inc.,* 117 S.Ct. at 2246 (quoting Adv. Comm. Notes on Fed. R. Civ. P. 23, 28 U.S.C. App. p. 697).

Rule 23(b)(3) also includes a list of factors for the court to consider in assessing whether the predominance and superiority factors are met: "(A) the class members' interests in individually controlling the prosecution or defense of separate actions; (B) the extent and nature of any litigation concerning the controversy already begun by or against class members; (C) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; and (D) the likely difficulties in managing a class action." Fed. R. Civ. P. 23(b)(3). "In setting out these factors, the Advisory Committee for the 1966 reform anticipated that in each case courts would 'consider the interests of individual members of the class in controlling their own litigations

18

and carrying them on as they see fit.'" *Amchem Products, Inc.* 117 S.Ct. at 2246 (quoting Adv. Comm. Notes on Fed. R. Civ. P. 23, 28 U.S.C. App. p. 698).

## 1.    Predominance

The predominance inquiry "'asks whether the common, aggregate-enabling, issues in the case are more prevalent or important than the non-common, aggregation-defeating, individual issues.'" *Tyson Foods, Inc. v. Bouaphakeo*, 136 S.Ct. 1036, 1045, 194 L.Ed.2d 124 (2016) (quoting 2 NEWBERG ON CLASS ACTIONS, § 4:49 (5th ed. 2012)).

As previously discussed in the commonality and typicality sections of this opinion, there are several key solidary liability questions affecting every member of the Putative Class. Answering these questions will likely determine the extent of each Putative Class member's liability for the claims in Timbermen's bankruptcy case and aid the parties in determining a formula for calculating each Putative Class member's virile share of those claims. The Court is convinced that these issues are common across the class and will predominate over any unique or personal defenses of an individual class member. Moreover, to the extent the defenses of certain subsets of the members may cause future tension or conflicts within the class, those issues can be handled through the creation of one or more subclasses, or if necessary, decertification. Accordingly, the Court finds the predominance factor is satisfied.

## 2.    Superiority

Rule 23(b)(3) requires the court to find "that a class action is superior to *other available methods* for fairly and efficiently adjudicating the controversy." Fed. R. Civ. P. 23(b)(3) (emphasis added). The plain wording of this rule necessarily suggests a comparative process. *Hanlon v. Chrysler Corp.,* 150 F.3d 1011, 1023 (9th Cir.1998).

19

The superiority factor is often the stumbling block to certification of a class under Rule 23(b)(3). This stems from the opt out right provided to class members under Rule 23(c)(2)(B)(v) when a class is certified under Rule 23(b)(3). After all, if a defendant could opt out of a class action seeking to impose a money judgment on the class, why would he or she not do so? And if it is likely most of the class will opt out, how can it be said the class action is a *superior* method for adjudicating this case? Reliable contends that the likelihood of a mass opt out by Timbermen members is so great, that certification of a class here amounts to nothing more than a "pointless judicial exercise." *In re Arthur Treacher's Franchise Litig.*, 93 F.R.D. 590, 595 (E.D. Pa. 1982)).

Yet courts, after comparing other methods of adjudication, have certified defendant classes in cases in which the defendants may have joint and several, i.e. solidary, liability on the grounds that any judgment against the class representatives would also be available against the absent defendants with whom they share responsibility. *See In re Alexander Grant & Co. Litigation*, 110 F.R.D. 528 (S.D. Fla. 1986); *Northwestern Nat. Bank of Minneapolis v. Fox & Co,*, 102 F.R.D. 507 (S.D.N.Y. 1984). Thus, the question here is whether the class action device is indeed superior to other methods available to the Trustee to pursue his solidary liability claims against the Timbermen members.

The Louisiana Civil Code articles on solidary obligations provide the alternatives available to the Trustee to pursue the claims in this case, thus allowing this Court to reasonably predict how this case could proceed outside of the class action device. *See In re Dehon*, 298 B.R. at 214 ("Ultimately . . . a court must formulate some predictions about the probable course of litigation in a case to correctly determine class certification.").

Because solidary obligations are those in which "each obligor is liable for the whole performance," the Trustee as the successor to Timbermen's rights, "*at his choice*, may demand the

whole performance from any one of his solidary obligors." La. Civ. Code arts. 1794 and 1795 (emphasis added). And, the Trustee "may institute action against any of his solidary obligors even after institution of action against another solidary obligor." *Id.* Under these provisions, the Trustee has complete discretion in deciding whether to sue one member, a group or all of the Timbermen members for the entire solidary obligation. He also has complete discretion in deciding whether such claim should be pursued in a single action or multiple actions.

Thus, in lieu of this class action, the Trustee could choose instead to add every Timbermen member to this action, or file 4,928 separate actions. Alternatively, and more likely, he could simply withdraw his request for class certification and pursue this action against only the Putative Class Representatives. Under this latter scenario, the Putative Class Representatives could raise against the Trustee "defenses that arise from the nature of the obligation, or that are personal to [them], or that are common to all the obligors." La. Civ. Code art. 1801. But they "may not raise a defense that is personal to another solidary obligor." *Id.*

The Putative Class Representatives collectively represent every year at issue in this case and every version of the indemnity agreement. Thus, they could, and likely would, assert defenses to the Trustee's claims which are common to all of the Timbermen members. In theory, then, the Trustee's pursuit of only the Putative Class Representatives could essentially adjudicate every claim and defense likely to arise with respect to each Timbermen member's alleged solidary liability for claims filed against the Timbermen estate.

The rights of the Putative Class Representatives must also be considered. The rights afforded to the Putative Class Representatives for contribution against the other members as co-obligors are also prescribed by the Civil Code: "A solidary obligor who has rendered the whole performance, though subrogated to the right of the obligee, may claim from the other obligors no

21

more than the virile portion of each." La. Civ. Code art. 1804. And, the procedure for enforcing that right is provided:

> A party sued on an obligation that would be solidary if it exists may seek to enforce contribution against any solidary co-obligor by making him a third party defendant according to the rules of procedure, whether or not that third party has been initially sued, and whether the party seeking to enforce contribution admits or denies liability on the obligation alleged by the plaintiff.

La. Civ. Code art. 1805.

Thus, for the Putative Class Representatives to obtain complete adjudication of their right to contribution, they would be forced to either file thousands of third-party complaints against each Timbermen member in this action, or wait to see if they are cast in judgment, and if so, then pursue the other members through a separate contribution action. Under any of these alternatives to the class action device, all Timbermen members would be required to manage discovery and all other aspects of this complex litigation at their own expense. With the increased attorney involvement, it is likely the costs would escalate not only for the individual members, but also for the Trustee, and thus Timbermen's bankruptcy estate.

Given the expense and complication of these alternatives, the Court cannot ignore the economic and procedural benefits afforded to Timbermen's bankruptcy estate *and* the Putative Class Representatives by the class action procedure. Simply put, the alternatives to the class action device are not appealing for any of the parties. Indeed, Louisiana's law on solidary obligations make this case particularly amenable to adjudication through a defendant class, as the judgement against the Putative Class Representatives collectively will likely be shared by the entire class. Thus, a fully informed Putative Class member has every incentive to remain in the class in order to minimize its losses and expenses and to take advantage of competent class counsel.

The court in *In re Alexander Grant & Co. Litigation* faced arguments similar to those made by Reliable here, that class certification was futile because there would likely be a mass opt out by the defendant class. The court nonetheless certified the class under Rule 23(b)(3), stating:

> The court is unpersuaded by predictions of a wholesale opt-out of partners exposed to astronomical damages. The [plaintiffs] will merely commence efforts to join individual partners. Further, this court would be reluctant to permit partners choosing to opt-out the ability to rely on [defendant's] counsel and thus, individual representation would be required. It is a more reasonable assumption that partners would choose to minimize their losses and expenses by taking advantage of competent legal counsel and remain in the class.

*Id.* at 536.

Like the court in *In re Alexander Grant*, this Court is unpersuaded by Reliable's predictions of a wholesale opt out by Timbermen members. Nevertheless, even if a mass opt out ensues, those opting out will likely be invited back to the proceeding, as the Trustee stated in both his briefs and during the certification hearing that he will pursue such members individually. If that occurs, like the court in *In re Alexander Grant*, this Court would require such members to bear their own expenses of the litigation. For the reasonably advised Putative Class Member, that alternative is sufficiently economically imprudent to make Reliable's prediction unlikely to occur.

In summary, a possible mass opt out by Timbermen members does not outweigh the obvious economic and procedural benefits of a defendant class under the facts of this case. Accordingly, the Court finds the superiority factor is met.

Having found that all of the Rule 23(a) prerequisites and the additional Rule 23(b)(3) requirements of predominance and superiority satisfied, the Court will enter an order certifying the class. The Court will now turn to the issues of class counsel and their compensation.

**D.      Rule 23(g)—appointing class counsel**

The Trustee's Motion also seeks appointment of defendant class counsel under Rule 23(g). In appointing class counsel, the Court *must* consider: "(i) the work counsel has done in identifying

23

or investigating potential claims [defenses] in the action; (ii) counsel's experience in handling class actions, other complex litigation, and the types of claims asserted in the action; (iii) counsel's knowledge of the applicable law; and (iv) the resources that counsel will commit to representing the class." Fed. R. Civ. P. 23(g).

At the inception of this adversary proceeding, all Putative Class Representatives except Reliable, Coastal and Cardiovascular, collectively hired two law firms:  Roedel, Parsons, Koch, Blanche, Balhoff & McCollister, A Law Corporation ("Roedel Parsons") and Steffes, Vingello & McKenzie, LLC ("Steffes").  The Trustee has requested that these two firms be appointed as joint counsel for the Putative Class (referred to collectively as "Putative Class Counsel").  No party, not even Reliable, has objected to the appointment of these firms.

Both firms filed responsive pleadings to the Trustee's Complaint and Motion to Certify Class, and appeared at all conferences and hearings in this matter.  The Trustee suggests that proposed class counsel from Roedel Parsons and Steffes have in prior cases, and in this case thus far, demonstrated their ability to work in tandem in such a manner that compliments, without duplicating, each other's efforts and strengths.  The evidence before the Court shows, among other things, that Roedel Parsons has litigated sixteen other class action cases, and that the firm serves as counsel for the Louisiana Association of Self-Insurance Employers, which provides the firm with specific expertise in the area of self-insurance funds.  The Steffes Firm has extensive experience in all aspects of bankruptcy proceedings. Its experience also includes the representation of two self-insurance funds in bankruptcy proceedings filed in other districts of Louisiana.  Further, Putative Class Counsel collectively have the resources, in terms of attorneys and support personnel, to adequately and fully defend the interests of the Putative Class.

Considering the experience of these firms under the elements of Rule 23(g), the Court finds Putative Class Counsel well qualified and will approve their appointment as class counsel.

## E.      Compensation of Putative Class Counsel

One of the unique issues presented in this case is the question of how Putative Class Counsel will be compensated.  As put by Putative Class Counsel, the ability of class representatives to fund the defense of the class is a key component of adequate representation.  The Putative Class Representatives contend it is neither reasonable nor feasible for them to fund the entire cost of defending the Putative Class.  They claim to have already expended large sums in defense of this action and anticipate incurring significant additional costs.

In order to defray these costs, the Putative Class Representatives have requested that the Trustee transfer $500,000 from Timbermen's bankruptcy estate to them, with the understanding that these funds are to only be used to fund the Putative Class Representatives' defense costs.  As authority for this request, Putative Class Representatives rely upon (i) 11 U.S.C. § 363(b), which authorizes a "trustee, after notice and a hearing" to "use, sell or lease, other than in the ordinary course of business, property of the estate;" and (ii) *U.S. Trustee v. Bethlehem Steel Corp.*, No. 02-Civ-2854 (MBM), 2003 WL 21738964 (S.D.N.Y. July 28, 2003) (allowing a transfer of up to $1.4 million from debtor's estate to union representatives for the sole purpose of paying the fees of counsel representing the union in negotiations against the debtor).

For the following reasons, the Court declines the Putative Class Representatives' funding request at this time.  First, the Court has already determined that it is not unfair for Reliable to be faced with funding defense costs for the Putative Class, because it would likely face the same defense costs whether it is sued individually or as part of a group.  The same reasoning applies to all other Putative Class Representatives.  And the evidence adduced during the certification

25

hearing shows that each of the Putative Class Representatives likely has the financial wherewithal to defend this action.

Second, the issue of whether Putative Class Counsel may be compensated by the bankruptcy estate under § 363(b) is not properly before the Court, as that issue must be decided in Timbermen's bankruptcy case. The Court will consider the propriety of such a request if and when made in the bankruptcy case.

Finally, the Putative Class Representatives have another source of funding for their defense costs. The Trustee recently reached a settlement with named defendant, Jonesboro State Bank, requiring Jonesboro to pay $300,000 to a joint defense fund upon the Court entering an order certifying the class in this case. (*See* Case No. 15-81004, ECF No. 775.) Thus, upon the entry of the certification order in this case, the Putative Class Representatives should have adequate resources to fund the expenses of this litigation on behalf of the class.

## CONCLUSION

The Trustee could have sued only the Putative Class Representatives on the alleged solidary obligations at issue in this case, thereby forcing those Representatives to bear not only the costs of defending this action, but also the costs of making all other Timbermen members third party defendants. It goes without saying that the costs to Timbermen's bankruptcy estate would also increase if this action expanded to include all 4,928 Timbermen members as parties.

Instead, the Trustee, on behalf of the estate and for the ultimate benefit of the claimants, chose what appears to be the least burdensome procedural vehicle for obtaining complete relief for all parties—the class action device. After performing the required rigorous analysis of all certification factors, the Court agrees that the class action device is the superior method for litigating the solidary obligation issues presented by the Trustee's Complaint. Therefore, the Court

will certify the class under Rule 23(b)(3) by separate order that conforms to Fed. R. Civ. P. 23(c)(1).

### # # #